**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF  DIVISION**


**DEBORAH BECK, Administratrix
of the Estate of ELSIE
MCDONALD-HAWKINS
DECEASED**                                                                            **PLAINTIFF**


**VS.**                          **CASE NO. 5:07CV00003 JMM**


**PHYSICIANS MUTUAL INSURANCE COMPANY**                          **DEFENDANT**


**ORDER**

Pending before the Court is defendant's Motion for Summary Judgment.  Plaintiff has

responded to the motion.  For the reasons stated below, the motion is granted (#43).

Plaintiff seeks a declaratory judgment with respect to her rights under an insurance policy

issued to Elsie McDonald-Hawkins, deceased ("Hawkins").  Plaintiff also makes a (1) breach of

contract claim based upon defendant's refusal to pay benefits due under Hawkins' Accident and

Sickness Hospital Confinement Indemnity Policy; and (2) a tort claim of bad faith based upon

allegations that defendant made misleading representations regarding policy benefits to Hawkins

and failed to adequately investigate plaintiff's claim.   Plaintiff seeks both compensatory and

punitive damages.

Defendants contend that (1) plaintiff is not entitled to benefits because Hawkins death

was not caused by an accident; (2) plaintiff has presented insufficient evidence of bad faith;

(3) the claim of bad faith is barred by the applicable statute of limitations; (4) and punitive

1

damages are not warranted.

I. *Undisputed Facts*

The following facts are not in dispute.

1.   Defendant issued a hospital indemnity policy with Policy Number 018-492-624 to Hawkins on December 6, 2001.

2.   Hawkins added an accidental death benefit to her existing policy in March of 2002.

3.   In June of 2002, Hawkins fell in her home and struck her head.

4.   Hawkins was taken by ambulance to the Drew Medical Center.

5.   Dr. Robert Jacobs treated Hawkins in the emergency room.

6.   A CT scan of Hawkins brain taken at Drew Memorial Hospital revealed a subarachnoid hemorrhage.

7.   Hawkins was transferred to Baptist Health Medical Center in Little Rock where she was treated by Dr. Arthur E. Squire and Dr. Reza Shahim.  Shahim is a board certified neurosurgeon.

8.   Hawkins died on July 6, 2002 at Baptist Health Medical Center approximately two weeks after her fall.

9.   Dr. Shahim signed Hawkins' death certificate which stated that the immediate cause of death was a subarachnoid hemorrhage which was due to or as a consequence of a ruptured aneurysm.

10.  Dr. Shahim indicated on the death certificate that the manner of death was "natural."

11.  In the Attending Physician's Statement requested by defendant, Dr. Shahim stated that Hawkins' death was not due directly to an accidental bodily injury, but instead the primary

2

cause of death was subarachnoid hemorrhage with a ruptured aneurysm being a secondary or contributing cause.

12. Dr. Shahim testified that in his medical opinion to a reasonable degree of certainty, Hawkins suffered a rupture aneurysm before her fall occurred.

13. Dr. Shahim testified that Hawkins' symptoms of severe headache, nausea, and loss of consciousness were consistent with a naturally occurring aneurysm; that her hemorrhage pattern was typical for a aneurysmal hemorrhage rather than a traumatic hemorrhage; that ruptured aneurysm normally occur spontaneously or naturally, rather than by trauma; that an aneurysm rupture by trauma is very rare; and that Hawkins showed no signs of a skull fracture.

14. Dr. Jacob testified that while he could not guarantee that Hawkins suffered a ruptured aneurysm before she fell, he could not dispute such a diagnosis, and that he thought within a reasonable degree of medical probability that the subarachnoid hemorrhage occurred before Hawkins fell.

15. Paramedic Rick Terry testified that Hawkins had symptoms of head injury sustained in trauma and noted the laceration on her forehead.

16. Paramedic Scotty Harrison testified that Hawkins had symptoms of head injury sustained in trauma, including nausea and vomiting.

17. The radiology studies taken at Drew Medical Center reveal that Hawkin's findings were consistent with injury sustained with a head trauma.

18. The Death Certificate signed by Dr. Shahim states that trauma caused by the closed head injury was a contributing factor to Hawkins' death.

18. After Hawkins' death, plaintiff submitted a claim for accidental death benefits under

3

the accidental death rider to Hawkins' policy.

19.  Defendant denied plaintiff's claim in October 2, 2002 contending that the medical records established that Hawkins' death was not accidental, rather, it was the result of a ruptured aneurysm that occurred naturally before her fall.

20.  Injury is defined by the rider as "Injury means bodily injury caused by an accident occurring after the Rider Effective Date and while this rider is in force and resulting in loss of life directly and independently of disease and all other causes."

II.  *Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds.  *Iowa Coal Min. Co. v. Monroe County*, 257 F.3d 846, 852 (8th Cir.2001);  Fed. R. Civ. P. 56.   The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Plaintiff's claim for benefits rests on whether Hawkins' death was due to the subarachnoid hemorrhage caused by a ruptured aneurysm resulting in her falling or if her fall caused the ruptured aneurysm.

Under the terms of the policy, plaintiff must prove not only that Hawkins death was caused by an accident, e.g. the fall, but also that the death resulted directly from the accident, independently of disease and all other causes.

Plaintiff has the burden of proving that Hawkins' death resulted from an accident.  *Wallin v. Insurance Co. Of North America*, 268 Ark. 847, 596 S.W.2d 716 (1980); *Benefit Ass'n of Ry.*

*Employees v. McKearnery*, 205 Ark. 949, 950, 171 S.W.2d 937, 938 (1943).

Dr. Shahim and Dr. Jacobs have both opined that Hawkins' death was not an accident but, rather due to a subarachnoid hemorrhage secondary to a ruptured aneurysm

Dr. Squire's consultation note state that Hawkins suffered from "a subarachnoid hemorrhage, likely before her fall." Pl. Exh. D. In addition, the Death Certificate lists the cause of death as "natural."

Plaintiff's evidence consists of family members who believe that it was the fall that caused Hawkin's death, the EMTs who testified that Hawkins had symptoms of a head injury, and the Death Certificate which states that trauma caused by the closed head injury was a contributing factor to Hawkins' death. This evidence is insufficient to carry plaintiff's burden.

Likewise, plaintiff's claim of bad faith fails as untimely and is without merit.

Under Arkansas law, the tort of bad faith is governed by a three (3) year statute of limitations. Ark. Code Ann § 16-56-105. Plaintiff concedes that the bad faith claim was not timely filed, but contends that the statute was tolled due to defendant's "fraudulent concealment" of its "sham investigation" of plaintiff's claim. *See Wilson v. GE Capital Auto Lease, Inc.*, 311 Ark. 84, 87, 841 S.W.2d 619, 620 (1992) (positive act of fraud, furtively planned and secretly executed will toll the statute).

Plaintiff argues that defendant failed to provide Hawkins a copy of the rider and only provided plaintiff with a copy after litigation began. In addition, she contends that defendant waited until the three-year statute of limitations ran before providing plaintiff with requested discovery that would have included the fact that defendant made the decision to deny benefits without review of all medical records.

The evidence does not support their argument but rather it is to the contrary.  In a  letter from defendant to Mr. Hawkins dated October 2, 2002, defendant informed Mr. Hawkins that their decision was based upon "the medical records received."  Pl Exh. A.   This information was sufficient to alert plaintiff that the medical records reviewed were limited to those received. Moreover, the fact that a copy of the rider was not found in Hawkins possession, does not  prove that Hawkins did not possess a copy at one time.   Plaintiff's evidence on this issue is insufficient for a jury to find a positive act of fraud.

Additionally, the claim lacks merit.  Plaintiff bases her bad faith claim upon (1) the rider containing the accidental death benefit not being found among Ms. Hawkins possessions; (2) plaintiff's counsel not providing a copy of the rider to plaintiff until November 10, 2005; (3) defendant not knowing when, or if, a copy of the rider was sent to Hawkins; (4) the adjuster who initially denied the claim not knowing at the time she denied the claim whether the rider was attached to the schedule, whether the definition of injury contained on the rider was in the claims file, or whether the statement signed by the attending physician had a different definition that the one on the rider; (4) the claim being denied before the adjuster had seen all of the relevant medical records; and (5) the file not being reviewed by either a doctor or a registered nurse.

Assuming all these facts as true and givng the plaintiff all favorable inferences, no jury applying Arkansas law could find that this constituted bad faith.

 Arkansas law considers an insurance company's actions to constitute bad faith only if they are "dishonest, malicious, or oppressive." *Aetna Casualty & Surety Co. v. Broadway Arms Corp.*, 281 Ark. 128, 133, 664 S.W.2d 463, 465 (1984). *State Auto* explained:

Examples of cases where we have found substantial evidence of bad faith include where an insurance agent lied by stating there was

no insurance coverage; aggressive, abusive, and coercive conduct by a claims representative, which included conversion of the insured's wrecked car; and where a carrier intentionally altered insurance records to avoid a bad risk.

338 Ark. at 58, 991 S.W.2d at 561 (citations omitted). In each of these instances, the insurance company's state of mind was "characterized by hatred, ill will, or a spirit of revenge." See id., 338 Ark. at 59, 991 S.W.2d at 561.

*Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838 (8th Cir. 2003) (disputing claims and delay in paying claims did not constitute bad faith).

III.   *Conclusion*

Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED THIS  22   day of   August  , 2007.



_____
James M. Moody
United States District Judge

7